ELECTRONICALLY FILED
Phillips County Circuit Court
Tamekia L. Franklin, Circuit Clerk
2023-Jul-11  10:03:49
54CV-23-127
C01D04 : 37 Pages

## IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS

KENNETH MILLIGAN                                                    PLAINTIFF

VS.                                   NO. 54CV-23- 127

TRAVELERS PERSONAL
INSURANCE COMPANY                                                  DEFENDANT

### COMPLAINT

Comes now the Plaintiff, Kenneth Milligan, (hereinafter referred to as either "Mr. Milligan" or "Plaintiff") by and through his attorneys, the Etoch Law Firm, and for his Complaint against the Defendant, Travelers Personal Insurance Company (hereinafter referred to as either "Travelers" or "Defendant"), and states as follows:

1. At all times relevant herein, Plaintiff was a resident of Phillips County, Arkansas.

2. The Defendant, Travelers, is an entity in the business of selling insurance with its principal place of business in Hartford, Connecticut, which did do business in the State of Arkansas at the time of the wrongs complained of herein and continues to do business in Arkansas.

3. The wrongs complained of herein arose out of the Defendant's conduct in doing business in Helena, Phillips County, State of Arkansas. Plaintiff insured a residence with Travelers which covered fire loss, with said residence located at 1115 Porter St., Helena, AR 72342. Venue is proper in this Court.

4. Travelers, for the consideration of a premium, which was paid, issued and delivered to Plaintiff a policy (believed to be Policy No.: 611717295 653 1) of fire loss and casualty insurance to cover Plaintiff's property listed above. The total amount of insurance upon the



EXHIBIT
A

property for damage due to a fire was a follows: $368,000.00 for the dwelling; $20,000.00 for other structures; $2,000.00 for household furnishings; $20,000.00 for loss of use. A copy of the policy is attached hereto as "Exhibit A" and incorporated herein word for word by reference.

5.  Plaintiff has paid all premiums as they became due. The residence insured by Plaintiff with Travelers was totally destroyed by fire on May 8, 2022. Said policy was in full force and effect at the time of the fire loss.

6.  Plaintiff promptly notified Travelers of this loss within the time and manner required by the terms of said policy and demanded payment of the above amount pursuant to the terms of the policy.

7.  The policy required that the claim be processed, and payment made to Plaintiff promptly within a reasonable period of time. Travelers also has a fiduciary obligation to Plaintiff to process the claim without delay and promptly. Travelers has denied this claim.

8.  Plaintiff provided Travelers all the information Travelers requested promptly after the fire. Plaintiff has answered every question asked by Travelers and has fully cooperated with Travelers and its agents.

9.  Plaintiff has complied with all conditions of the policy.

10.  Plaintiff states the residence listed herein that he insured with Travelers was totally destroyed by the fire. Due to the total loss of the structure Plaintiff is entitled to recover the full $368,000.00  fire loss limit from Travelers pursuant to Arkansas Code Annotated §23-88-101 titled Valued policy law, which states in pertinent part:

> (a) [I]n case of a total loss by fire or natural disaster of the property insured, a property insurance policy other than for flood and earthquake insurance shall be held and considered to be a liquidated demand against the company taking the risk for the full amount stated in the policy or the full amount upon which the company charges, collects, or receives a premium.

11. Although due demand has been made by Plaintiff for the proceeds of the policy from Travelers, Travelers has failed, neglected and refused to pay the total value of the policy within a reasonable amount of time, pursuant to the terms of the policy, or within the time specified in the policy. Instead, in a letter dated March 8, 2023, a copy of which is attached hereto as "Exhibit B" and incorporated herein word for word, Travelers informed Mr. Milligan that it is denying coverage on his claim. Travelers denial of coverage is in violation of Plaintiff's policy with Travelers, which was in full force and effect at the time of the fire.

12. The Plaintiff is entitled to pre-trial interest of at least 6 percent beginning 60 days after the fire, twelve percent damages/penalties, together with a reasonable attorney's fee and her costs as provided in Ark. Code Ann. §3-79-208 .

13. Plaintiff requests a trial by jury on all issues.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, Kenneth Milligan, prays for Judgment against the Defendant, Travelers, for $367,00.00, which is the $368,000.00 policy limits under Plaintiff's Dwelling Coverage less the $1,000.00 deductible; together with pre-trial interest, twelve percent damages, all of his costs and a reasonable attorney's fee; and for such other and further relief which may be proper.

Respectfully submitted,

ETOCH LAW FIRM

By: _Richard Lewis_

Robert B. Lewis (2019189)
Louis A. Etoch (89030)
Attorney at Law
221 W. Second St., Ste. 312
Little Rock, AR 72201
(501)-333-9400
robert@etochlaw.com
louis@etochlaw.com

*Exhibit "A"*



This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as described on the Declarations Page.   It is a full, true and complete reproduction of the insurance policy.   No additional insurance is afforded by this copy.

Signature:

Date: 4.7.2023



**TRAVELERS**

## Landlord Dwelling Policy Declarations

**Named Insured and Mailing Address**
KENNETH MILLIGAN
1115 PORTER ST
HELENA, AR 72342-3027
KMILLIGAN68@YAHOO.COM

**Your Agency's Name and Address**
GEICO INS AGENCY LLC
4759 POPLAR AVE
MEMPHIS, TN 38117

**Residence Premises**
1115 PORTER ST
HELENA, AR 72342-3027

---

## Policy Information

| | | | |
|---|---|---|---|
| Your Policy Number | 611717295 653 1 | **For Policy Service** | 1.901.800.5777 |
| Your Account Number | | **For Claim Service** | 1.800.252.4633 |
| **Your Insurer:** | TRAVELERS PERSONAL INSURANCE COMPANY | | |
| | a subsidiary or affiliate of The Travelers Indemnity Company | | |
| | One Tower Square, Hartford, CT 06183 | | |

---

**The policy period is from April 27, 2022 at 12:01 A.M. STANDARD TIME to April 27, 2023 at 12:01 A.M. STANDARD TIME at the residence premises.**

---

## Discounts

The following discounts reduced your premium:

| | | |
|---|---|---|
| Loss Free | Good Payer | Fire Protective Device |
| Theft Protective Device | | |

## Savings Reflected in Your Total Premium:                    $1,002.00

---

## Coverages and Limits of Liability

| Property Coverage Section | Limit |
|---|---|
| Coverage A – Dwelling | $368,000 |
| Coverage B – Other Structures | $20,000 |
| Coverage C – Household Furnishings | $2,000 |
| Coverage D – Loss of Use | $20,000 |

| Liability Coverage Section | Limit |
|---|---|
| Coverage E – Premises Liability (each occurrence) | $100,000 |
| Coverage F – Medical Payments to Others (each person) | $1,000 |

---



**TRAVELERS**

---

## Deductibles

| Peril Deductible | Deductible |
|---|---|
| Property Coverage Deductible (All Perils) | $1,000 |

*In case of loss under the Property Coverage Section, only that part of the loss over the applicable deductible will be paid (up to the coverage limit that applies).*

---

## Additional Coverages

*The limit shown for each of the Additional Coverages is the total limit for each loss in that category.*

| Property – Additional Coverages | Limit |
|---|---|
| Debris Removal (Additional % of damaged covered property limit) | 5% |
| Trees, Shrubs and Other Plants (5% of Coverage A - Dwelling Limit) | Per Tree $500 Per Loss $18,400 |
| Fire Department Service Charge | $500 |
| Loss Assessment | $1,000 |
| Ordinance or Law (10% of Coverage A - Dwelling Limit) | $36,800 |
| Limited Fungi or Other Microbes Remediation | $5,000 |

*The applicable policy deductible applies unless otherwise noted.*

| Liability – Additional Coverages | Limit |
|---|---|
| Loss Assessment | $1,000 |

*Please review your policy for other Personal Property Special Limits of Liability and Additional Coverages that may apply.*

---

### Required Forms and Endorsements Included in Your Policy:    Form: 653

| | |
|---|---|
| Policy Quick Reference | HQ-T88 CW (05-17) |
| Agreement, Definitions & Policy Conditions | HQ-D88 CW (05-17) |
| Property Coverage Section | HQ-P53 CW (11-18) |
| Liability Coverage Section | HQ-L88 CW (08-20) |
| Signature Page | HQ-S99 CW (05-17) |
| Special Provisions - Arkansas | HQ-300 AR (04-22) |
| Additional Benefits | HQ-860 CW (08-18) |

---



| | |
|---|---|
| Named Insured   KENNETH MILLIGAN | Policy Number   611717295 653 1 |
| Policy Period      April 27, 2022 to April 27, 2023 | Issued On Date   May 8, 2022 |

## Information About Your Property

There are many factors that determine the premium on your policy, some of which are displayed below. If you would like a policy review, please contact your agent or Travelers Representative.

| | | |
|---|---|---|
| # of Families: 1 Family | Year Built: 1990 | Construction Type: Masonry |
| # of Stories: 1 | Square Footage: 2902 | Siding Type: Solid Brick/Stone |
| # of Bathrooms: 2 | Age of Roof: 4 | Roof Material Type: Asphalt-Fiberglass |
| Garage - Number of Cars: 00 | Garage Type: None | Foundation Type: Slab |
| # of Employees: | | Finished Basement: 00 |

Issued on 05-08-2022
Countersignature (Agent Use Only): _____

## For Your Information

For information about how Travelers compensates independent agents and brokers, please visit www.Travelers.com or call our toll free telephone number 1-866-904-8348. You may also request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

We want to make sure we are using accurate information to rate your policy. Because you are the most familiar with your home we need your help to make sure that the information on your Declarations is accurate and complete. If any of the information on your Declarations has changed, appears incorrect or is missing, please advise your agent or Travelers representative. We also need you to check our website at www.mytravelers.com/discounts to ensure that you are receiving all of the discounts for which you are eligible. Once at the website, type in your policy number 6117172956531 and product code QH2 to view all available discounts. Should you have any questions about the information on your Declarations or your discounts, please call your agent or Travelers representative.

**WARNING:**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Policyholders have the right to file a complaint with the Arkansas Insurance Department (AID). You may call AID to request a complaint form at (800) 852-5494 or (501) 371-2640 or write the Department at:

        Arkansas Insurance Department
        1 Commerce Way, Suite 102
        Little Rock, AR 72202

Earthquake Coverage is not provided on your policy. If you are interested in purchasing Earthquake Coverage, please contact your agent or Travelers representative.

HQ-T88 CW (05-17)

## TRAVELERS INSURANCE POLICY

## YOUR LANDLORD POLICY QUICK REFERENCE

Beginning
on Page

LANDLORD POLICY DECLARATIONS ................................................................................. D-1
    NAMED INSURED AND MAILING ADDRESS
    LOCATION OF YOUR RESIDENCE PREMISES
    YOUR AGENCY'S NAME AND ADDRESS
    MORTGAGEE NAME AND ADDRESS
    POLICY INFORMATION
    DISCOUNTS
    COVERAGES AND LIMITS OF LIABILITY
    DEDUCTIBLES

AGREEMENT ............................................................................................................................. A-1
DUTY TO REPORT CHANGES IN EXPOSURE ................................................................... A-1
DEFINITIONS ........................................................................................................................... A-1
POLICY CONDITIONS ........................................................................................................... A-3

PROPERTY COVERAGE SECTION
    PROPERTY COVERAGE A – DWELLING ................................................................. P-1
    PROPERTY COVERAGE B – OTHER STRUCTURES ............................................. P-1
    PROPERTY COVERAGE C – HOUSEHOLD FURNISHINGS................................. P-1
    PROPERTY – PERILS INSURED AGAINST............................................................. P-2
    PROPERTY COVERAGE D – LOSS OF USE ........................................................... P-3
    PROPERTY – ADDITIONAL COVERAGES.............................................................. P-4
    PROPERTY – EXCLUSIONS ....................................................................................... P-7
    PROPERTY – CONDITIONS ....................................................................................... P-9

LIABILITY COVERAGE SECTION
    LIABILITY COVERAGE E – PREMISES LIABILITY............................................... L-1
    LIABILITY COVERAGE F – MEDICAL PAYMENTS TO OTHERS ...................... L-1
    LIABILITY – ADDITIONAL COVERAGES .............................................................. L-1
    LIABILITY – EXCLUSIONS ....................................................................................... L-2
    LIABILITY – CONDITIONS ....................................................................................... L-5

SIGNATURE PAGE ................................................................................................................. S-1

© The Travelers Indemnity Company  All rights reserved

HQ-D88 CW (05-17)

# TRAVELERS INSURANCE POLICY

**Travelers Personal Insurance Company**
One Tower Square, Hartford, Connecticut 06183
(A Stock Insurance Company)

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DUTY TO REPORT CHANGES IN EXPOSURE

You or an "insured" must notify us when:

1. There is a change to the mailing or "residence premises" address shown in the Declarations;

2. A named "insured" dies;

3. Title to or ownership of the "residence premises" changes;

4. There is a change to the use of the "residence premises" with respect to "business" conducted;

5. There is a change to the use of the "residence premises" as a rental property or the length of the rental terms allowed on the "residence premises"; or

6. An addition, alteration or renovation is made to a dwelling or other building on the "residence premises".

If you fail to report a change relating to the insured property within 60 days, it may result in denial of coverage under this policy.

## DEFINITIONS

In this policy, you and your refer to the named "insured" shown in the Declarations; and

We, us and our refer to the member company of Travelers providing this insurance and shown as Your Insurer in the Declarations.

In this policy, certain words and phrases are in quotes. Those words and phrases are defined as follows:

1. "Aircraft" means any device used or designed for flight, including any:

   a. Unmanned flying device, self-propelled missile or spacecraft; and

   b. Accessory, equipment or part for such device, whether or not attached to the device.

   Under Liability Coverage E - Premises Liability, Liability Coverage F – Medical Payments to Others and Liability – Additional Coverages, "aircraft" does not include any unmanned flying device that:

   a. Is used or operated for recreational purposes only; and

   b. Weighs less than 10 pounds with or without any accessory, equipment or part attached.

2. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability" mean liability for "bodily injury" or "property damage" arising out of the:

   a. Ownership of such vehicle or craft by an "insured";

   b. Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   c. Entrustment of such vehicle or craft by an "insured" to any person;

   d. Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

   e. Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   For the purpose of this definition:

   a. Aircraft means an "aircraft" as defined in Definitions 1.;

   b. Hovercraft means a self-propelled motorized ground effect vehicle and includes flarecraft and air cushion vehicles;

   c. Motor vehicle means a "motor vehicle" as defined in Definitions 10.; and

   d. Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

HQ-D88 CW (05-17)

**Page A-1**

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

HQ-D88 CW (05-17)

3. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

4. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation.

5. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

6. "Fuel system" means:

   a. One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

      (1) Are, or were, used to hold fuel; and

      (2) Are, or were, located on any one location;

   b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in 6.a.;

   c. Filler pipes and flues connected to one or more containers, tanks or vessels described in 6.a.;

   d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in 6.a.,

   e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in 6.a.; or

   f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in 6.a.

   A "fuel system" does not include any fuel tanks that are permanently affixed to a "motor vehicle" or watercraft owned by an "insured", used for powering the "motor vehicle" or watercraft and not used at any time or in any manner for "business".

7. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

Under the Liability Coverage Section, this does not include any "fungi" that are, are on, or are contained in, products or goods intended for consumption.

8. "Insured" means:

   a. The person or organization shown as the named "insured" on the Declarations; and

   b. Any person or organization while acting as real estate manager for you.

   Under both the Property and Liability Coverage Sections of this policy, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

9. "Insured location" means the "residence premises" shown in the Declarations.

10. "Motor vehicle" means:

    a. A self-propelled land or amphibious vehicle; or

    b. Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in 10.a.

    "Motor vehicle" does not include model, hobby or children's toy vehicles.

11. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:

    a. "Bodily injury"; or

    b. "Property damage".

12. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthful or hazardous building materials. Waste includes materials to be recycled, reconditioned or reclaimed.

13. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

14. "Residence employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are related to the maintenance or use of the "residence premises", including household or domestic services.

    A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-D88 CW (05-17)

employee" on leave or to meet seasonal or short-term workload conditions.

15. "Residence premises" means the one, two, three or four family dwelling or unit shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

16. "Vacant" means the dwelling or unit lacks the necessary amenities, adequate furnishings or utilities and services required to sustain normal occupancy. A dwelling or unit being constructed is not considered "vacant".

## POLICY CONDITIONS

1. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions of coverage, whether that general program revision is implemented through introduction of:

   a.  A subsequent edition of this policy form; or

   b.  An amendatory endorsement.

2. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

3. **Duty to Cooperate and Inform.** The coverage provided by this policy and the premium charged for this policy are based on information you have given us. You agree:

   a.  To cooperate with us in determining if this information is correct and complete;

   b.  To inform us of any change in title or use of the "residence premises"; and

   c.  That, if within 60 days of the policy effective date this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly by giving you notice. This notice may be delivered to you, electronically transmitted to you, if permissible by law, or mailed to you at your mailing address shown in the Declarations. The notice will contain the changed, incorrect or incomplete information along with the resulting premium change.

4. **Cancellation.** This policy may be cancelled during the policy period as follows:

   a.  A named "insured" shown in the Declarations may cancel this policy by:

   (1) Returning this policy to us; or

   (2) Giving us advance written notice of the date cancellation is to take effect.

   We may accept another form of notice from a named "insured". The cancellation by a named "insured" will be binding on any other named "insured".

   b.  We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, electronically transmitted to you, if permissible by law, or mailed to you at your mailing address shown in the Declarations. Proof of mailing or electronic transmission will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect;

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect; or

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

© 2016 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

If specific Cancellation provisions apply in your state, they will appear in the **Special Provisions Endorsement** that is part of this policy.

c.  When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d.  If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5.  **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, electronically transmitting to you, if permissible by law, or mailing to you at the mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing or electronic transmission will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

If we offer to renew and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

If specific Nonrenewal provisions apply in your state, they will appear in the **Special Provisions Endorsement** that is part of this policy.

6.  **Assignment.** Assignment of this policy is void unless we give our written consent. We, as the non-assigning party, will not recognize any assignment of this policy unless our written consent is provided.

7.  **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under the Liability Coverage Section to Medical Payments to Others.

8.  **Death.** If any person named in the Declarations dies:

a.  We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

b.  "Insured" will then also include, with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

HQ-P53 CW (11-18)

## TRAVELERS LANDLORD INSURANCE POLICY

## PROPERTY COVERAGE SECTION

---

### PROPERTY COVERAGE A – DWELLING

1. We cover:
   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
   b. Materials and supplies located on or next to the "residence premises" used to construct,

   alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

---

### PROPERTY COVERAGE B – OTHER STRUCTURES

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. It also includes other structures that are not buildings, including driveways, walkways and patios.

2. We do not cover:
   a. Land, including land on which the other structures are located;
   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage; or
   c. Other structures from which any "business" is conducted.

---

### PROPERTY COVERAGE C – HOUSEHOLD FURNISHINGS

1. **Covered Property.** We cover your appliances, carpeting and other household furnishings in that part of the "residence premises" rented or held for rental to any person other than an "insured".

2. **Property Not Covered.** We do not cover:
   a. Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards, gift certificates, digital currency and any related currencies used in place of money;
   b. Securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps;
   c. Watercraft, including their trailers, furnishings, accessories, equipment, parts and outboard engines or motors.

      We do cover non-motorized personal craft under 20 feet in length, such as kayaks, surf boards, canoes, paddle boards, row boats, wind surfers or kite boards;
   d. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

   e. Animals, birds or fish;
   f. "Motor vehicles".
      (1) This includes:
         (a) Accessories, equipment and parts; or
         (b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle".

         The exclusion of property described in 2.f.(1)(a) and (b) applies only while such property is attached to or located in or upon the "motor vehicle";
      (2) We do not cover "motor vehicles" not required to be registered for use on public roads or property, which are:
         (a) Used to service an "insured's" residence; or
         (b) Designed to assist the handicapped;
   g. "Aircraft";
   h. Hovercraft, including accessories, equipment and parts, whether or not attached to the hovercraft. Hovercraft means a self-propelled motorized ground effect vehicle and includes flarecraft and air cushion vehicles;

---

© 2018 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

i.  Property of roomers, boarders, tenants, and other occupants who provide compensation to an "insured" for use of all or part of the "residence premises". This includes property of guests of any such roomer, boarder, tenant, or other occupant;

j.  "Business" or personal records or data, including such data stored in:

(1) Books of account, drawings or other paper records;

(2) Computers and related or similar equipment; or

(3) Digital, electronic or virtual form;

k.  Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds;

l.  Grave markers; or

m.  Water or steam.

## PROPERTY – PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Property Coverages A, B and C caused by any of the following perils, unless the loss is excluded in Property – Exclusions.

1. **Fire or Lightning.**

2. **Windstorm or Hail.**

   This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building, causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion.**

4. **Riot or Civil Commotion.**

5. **Aircraft.**

   This peril includes remotely operated, unmanned flying device, self-propelled missile or spacecraft.

6. **Vehicles.**

   This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the "residence premises".

7. **Smoke.**

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from the manufacture of controlled substances, agricultural smudging or industrial operations.

8. **Vandalism or Malicious Mischief.**

   This peril does not include loss:

a.  By pilferage, theft, burglary or larceny, but we do cover damage to covered property caused by burglars; or

b.  To property on the "residence premises", and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss regardless of the policy's inception or renewal date.

9. **Falling Objects.**

   This peril does not include loss to the inside of a building or property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

10. **Weight of Ice, Snow or Sleet.**

    This peril means weight of ice, snow or sleet which causes damage to a building or property contained in a building.

    This peril does not include loss to a:

a.  Fence, awning, pavement or patio;

b.  Outdoor spa or hot tub, outdoor sauna or outdoor swimming pool and any related permanently affixed equipment;

c.  Footing, foundation, bulkhead, wall or any other structure or device that supports all or part of a building or other structure;

d.  Retaining wall or bulkhead that does not support all or part of a building or other structure; or

e.  Pier, wharf or dock;

whether any item identified in **10.(a)** through **(e)** is wholly or partially above or below ground.

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

**11. Accidental Discharge or Overflow of Water or Steam.**

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance, if the accidental discharge or overflow of water or steam originates from within a system or appliance:

(1) On the "residence premises"; or

(2) Off the "residence premises", if located on a premises adjacent to the "residence premises".

This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance from which this water or steam escaped.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against 13. Freezing;

(3) Caused by accidental discharge or overflow of water or steam from within a storm drain whether located on or off the "residence premises";

(4) Caused by accidental discharge or overflow of water or steam from within a steam or sewer pipe located off the "residence premises";

(5) To a building caused by constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years; or

(6) On the "residence premises", if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss.

c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment.

d. Property – Exclusion 3. Water, paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**12. Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging.**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in Peril Insured Against 13. Freezing.

**13. Freezing.**

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain all systems and appliances of water.

If the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment.

**14. Sudden and Accidental Damage from Artificially Generated Electrical Current.**

## PROPERTY COVERAGE D – LOSS OF USE

The limit of liability for Property Coverage D is the total limit for the coverages in 1. Fair Rental Value and 2. Civil Authority Prohibits Use below.

1. **Fair Rental Value.** If a loss covered under the Property Coverage Section makes that part of the "residence premises" rented to others or held for

rental by you not fit to live in, we cover the amount of fair rental value of such premises lost, less any expenses that do not continue while it is not fit to live in.

Coverage under Fair Rental Value will only apply when that part of the "residence premises" is held

© 2018 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

for rental or rented to others for a term of 6 consecutive months or more.

Payment will be for the shortest time required to repair or replace such premises, but for no more than 24 months.

Written proof that the "residence premises" is rented, was held for rental at the time of loss or has been rented within the 12 months prior to the date of loss is required.

2. **Civil Authority Prohibits Use.** If a civil authority prohibits use of the "residence premises" as a result of direct physical damage to neighboring premises caused by a Peril Insured Against under this policy, we cover resulting 1. Fair Rental Value

as provided above for no more than 30 days. Neighboring premises means a premises in sufficient proximity to the "residence premises" that there exists a reasonable risk that the damage affecting the neighboring premises could endanger either the "residence premises" or the safety of its occupants while in the "residence premises".

The periods of time under 1. Fair Rental Value and 2. Civil Authority Prohibits Use above are not limited by expiration of this policy.

3. **Loss or Expense Not Covered.** We do not cover loss or expense due to cancellation of a lease or agreement.

## PROPERTY – ADDITIONAL COVERAGES

Unless otherwise stated, the following coverages are additional insurance and are subject to the applicable policy deductible.

1. **Debris Removal.** We will pay your reasonable expense for the removal of debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional percentage, as shown in the Declarations for this Property – Additional Coverage, of that limit is available for such expense.

   We do not pay for:

   a. Extraction of "pollutants" from land or water; or

   b. Removal, restoration or replacement of polluted land or water.

2. **Reasonable Repairs.**

   a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

   b. If the measures taken involve repair to other damaged property, we will pay only if that property is covered under this policy and the damage is caused by a Peril Insured Against.

   This coverage does not increase the limit of liability that applies to the covered property or

relieve you of your duties described in Property – Conditions 2.c. Duties After Loss.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns on the "residence premises", for loss caused by the following Perils Insured Against:

   a. Fire or Lightning;

   b. Explosion;

   c. Riot or Civil Commotion;

   d. Aircraft;

   e. Vehicles not owned or operated by a resident of the "residence premises"; or

   f. Vandalism or Malicious Mischief.

   We will pay up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for all damaged trees, shrubs, plants or lawns. No more than the Per Tree Limit shown in the Declarations for this Property – Additional Coverage will be paid for any one tree, shrub or plant. We do not cover property illegally grown or grown for "business" purposes.

4. **Fire Department Service Charge.** We will pay up to the limit shown in the Declarations for this Property – Additional Coverage for reasonable and necessary fire department charges incurred by you when the fire department is called to save or protect covered property from a Peril Insured Against.

   No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc with its permission

removed from or returned to a premises endangered by a Peril Insured Against and for no more than 60 days while removed. This coverage does not change the limit of liability that applies to the removed property.

**6. Loss Assessment.**

  a.  We will pay up to the limit shown in the Declarations for this Property – Additional Coverage for your share of loss assessment charged during the policy period against you, as owner of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Property Coverage A.

  This coverage does not apply to assessments made as a result of damage caused by earthquake and other earthquake shocks, including land shock waves or tremors before, during or after volcanic activity.

  We do cover loss caused directly by fire or explosion resulting from earthquake and other earthquake shocks.

  The limit shown in the Declarations is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

  b.  We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

  c.  Property – Condition 16. Policy Period does not apply to this coverage.

**7. Collapse.**

  a.  With respect to this Property – Additional Coverage:

    (1)  Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

    (2)  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

    (3)  A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

    (4)  A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

  b.  We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if the collapse was caused by one or more of the following:

    (1)  A Peril Insured Against;

    (2)  Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse or there are visible signs of damage and the "insured" has not taken prompt action to prevent further damage;

    (3)  Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

    (4)  Weight of contents, equipment, animals or people;

    (5)  Weight of rain which collects on a roof; or

    (6)  Use of defective material, methods or faulty, inadequate workmanship in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

  c.  Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, footing, foundation, wall, floor, retaining wall, bulkhead, pier, wharf or dock, whether any item is wholly or partially above or below ground, is not included under 7.b.(2) through (6), unless the loss is a direct result of the collapse of a building or any part of a building.

  d.  This coverage does not increase the limit of liability that applies to the damaged covered property.

**8. Glass or Safety Glazing Material.**

  a.  We cover:

    (1)  The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(2) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in 8.a.(2); or

(2) On the "residence premises" if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss.

c. This coverage does not increase the limit of liability that applies to the damaged property.

9. **Ordinance or Law.**

a. You may use up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in 9.a.

c. We do not cover:

(1) Stigma damage or any actual or perceived reduction or diminution in value to any covered building or other

structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires an "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" in or on any covered building or other structure.

d. The most we will pay for any increased costs to comply with any ordinance or law that becomes effective after the date of loss is $5,000.

10. **Inflation Coverage.** We may adjust the limits of liability for Property Coverage A at the beginning of each successive policy term to reflect estimated increases in rebuilding costs for your insured property. We may also adjust the limits of liability for Property Coverages B, C and D. The rules then in use by us will determine the new amounts for these coverages.

Payment of the required premium when due for the successive policy term will be sufficient to indicate your acceptance of the adjusted increased limits.

We will also adjust the limits of liability at the time of a loss by the same percentage pro-rated from the effective date of the policy period or the effective date of change if you have requested a change to the limit of liability for Property Coverage A during the policy period.

11. **Limited "Fungi" or Other Microbes Remediation.**

a. If a loss covered under the Property Coverage Section results in "fungi" or other microbes, we will pay up to the limit shown in the Declarations for this Property – Additional Coverage for:

(1) Remediation of the "fungi" or other microbes. This includes payment for the reasonable and necessary cost to:

(a) Remove the "fungi" or other microbes from covered property or to repair, restore or replace that property; and

(b) Tear out and replace any part of the building as needed to gain access to the "fungi" or other microbes;

(2) Any reasonable and necessary loss of fair rental value as covered under Property Coverage D – Loss of Use, if the "fungi" or other microbes makes the "residence premises" not fit to live in; and

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

(3) Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi" or other microbes, whether performed prior to, during or after removal, repair, restoration or replacement.

b. We will pay under this Property – Additional Coverage only if:

(1) The covered loss occurs during the policy period;

(2) All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

(3) We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi" or other microbes.

c. The most we will pay under this Property – Additional Coverage is the limit of liability shown in the Declarations for Limited "Fungi" or Other Microbes Remediation. This is the most we will pay for the total of all loss or costs during the policy period regardless of the:

(1) Number of locations or items of property insured under this policy; or

(2) Number of losses or claims made.

Any amount payable under Property Coverage D as described in 11.a.(2) of this Property – Additional Coverage is included within the limit of liability shown in the Declarations for Limited "Fungi" or Other Microbes Remediation.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi" or other microbes, loss payment will not be limited by the terms of this Property – Additional Coverage, except to the extent that "fungi" or other microbes cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Property – Additional Coverage.

e. This coverage does not increase the limit of liability that applies to:

(1) The damaged property; or

(2) Property Coverage D – Loss of Use.

All other provisions of this policy apply to Property – Additional Coverages.

## PROPERTY – EXCLUSIONS

We do not insure for any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

(1) Results in widespread damage;

(2) Affects a substantial area; or

(3) Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

(1) Any acts of nature;

(2) Any human action or inaction;

(3) The forces of animals, plants or other living or dead organisms; or

(4) Any other natural or artificial process.

1. **Ordinance or Law,** meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting

debris. This exclusion, 1.a., does not apply to the amount of coverage that may be provided for under Property – Additional Coverage 9. Ordinance or Law;

b. The requirements of which result in stigma damage or any actual or perceived reduction or diminution in value to property; or

c. Requiring an "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

This exclusion applies whether or not the property has been physically damaged.

2. **Earth Movement,** meaning:

a. Earthquake and other earthquake shocks, including land shock waves or tremors before, during or after volcanic activity;

b. Volcano activity, including:

(1) Volcanic eruption;

(2) Volcanic explosion;

(3) Effusion of volcanic material; or

(4) Lava flow,

© 2018 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

c.  Mudslide, including mudflow, debris flow, landslide, avalanche or sediment;

d.  Sinkhole;

e.  Subsidence;

f.  Excavation;

g.  Erosion; or

h.  Any expansion, shifting, rising, sinking, contracting or settling of the earth, soil or land.

This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man-made material.

We do cover loss caused directly by fire or explosion resulting from any earth movement.

3.  **Water,** meaning any:

   a.  Flood, surface water, ground water, subsurface water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water or spray from any of these, whether a result of precipitation or driven by wind;

   b.  Water or water borne material that enters through or backs up from a sewer or drain, or which discharges or overflows from a sump, sump pump, related equipment or any other system designed to remove surface or subsurface water which is drained from the foundation area;

   c.  Water or water borne material located below the surface of the ground including water or water borne material:

      (1)  Which exerts pressure on, seeps, leaks or flows into:

         (a)  Any part of the dwelling or other structures;

         (b)  The foundation of the dwelling or other structures;

         (c)  Any paved surface located on the "residence premises"; or

         (d)  Any spa, hot tub or swimming pool; or

      (2)  Which causes earth movement; or

   d.  Overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

We do cover loss caused directly by fire or explosion resulting from water.

4.  **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises".

   If the failure results in a loss from a Peril Insured Against, on the "residence premises", we will pay for the loss caused by that peril.

5.  **Neglect,** meaning neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6.  **War.** War includes the following and any consequence of any of the following:

   a.  Declared or undeclared war, civil war, insurrection, rebellion or revolution;

   b.  Warlike act by a military force or military personnel; or

   c.  Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon, even if the discharge is accidental, will be deemed a warlike act.

7.  **Nuclear Hazard,** meaning any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   Loss caused by the nuclear reaction, radiation or radioactive contamination is not considered loss caused by fire, explosion or smoke.

   We do cover loss caused directly by fire resulting from any nuclear hazard.

8.  **Illegal Activities or Operations,** meaning:

   a.  Illegal growing of plants or the illegal raising or keeping of animals; or

   b.  Illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials or any other natural or synthetic substance.

   This exclusion applies whether or not the illegal activities or operations described above were known to or within the control of an "insured".

   We do cover loss caused directly by fire or explosion resulting from any illegal activities or operations described in 8.a. and b.

9.  **Intentional Loss,** meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

© 2018 The Travelers Indemnity Company  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

10. **Governmental Action,** meaning the destruction, confiscation or seizure of property described in Property Coverages A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

11. **"Fungi" or Other Microbes,** meaning any loss or cost resulting from, arising out of, caused by, consisting of or related to "fungi", other microbes or rot.

This exclusion does not apply to:

a. "Fungi" or other microbes remediation coverage that may be afforded under Property – Additional Coverage 11. Limited "Fungi" or Other Microbes Remediation; or

b. "Fungi" or other microbes that results from fire or lightning.

12. **Seepage or Leakage,** meaning constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years.

This exclusion applies regardless of the source from which the water, steam or condensation seeped or leaked.

## PROPERTY – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

   b. For more than the applicable limit of liability.

2. **Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the following duties are not performed. These duties must be performed either by you, an "insured" seeking coverage or a representative of either.

   a. Give us prompt notice. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than one year after the date of loss;

   b. Notify the police in case of loss by theft;

   c. Protect the property from further damage. If repairs to the property are required, you must:

      (1) Make reasonable and necessary repairs to protect the property; and

      (2) Keep an accurate record of repair expenses;

   d. Cooperate with us in the investigation of a claim;

   e. Prepare an inventory of damaged household furnishings showing the quantity, description, value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. As often as we reasonably require:

      (1) Show the damaged property;

      (2) Provide us with records and documents we request and permit us to make copies; and

      (3) Submit to examination under oath, while not in the presence of another "insured", and sign the same; and

   g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) The time and cause of loss;

      (2) The interest of all "insureds" and all others in the property involved and all liens on the property;

      (3) Other insurance which may cover the loss;

      (4) Changes in title or occupancy of the property during the term of the policy;

      (5) Specifications of damaged buildings and detailed repair estimates;

      (6) The inventory of damaged household furnishings described in 2.e.; and

      (7) Receipts for additional living expenses incurred and records that support the fair rental value loss.

3. **Loss Settlement.** In this Property – Condition, repair or replace and replacement cost do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

increased costs is provided in Property –
Additional Coverage 9. Ordinance or Law.
Covered property losses are settled as follows:

a.  Property of the following types:

(1) Household furnishings;

(2) Awnings, carpeting, household
appliances, outdoor antennas and
outdoor equipment, whether or not
attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not
more than the amount required to repair or
replace.

b.  Buildings covered under Property Coverages
A or B at replacement cost without deduction
for depreciation, subject to the following:

(1) If, at the time of loss, the amount of
insurance in this policy on the damaged
building is 80% or more of the full
replacement cost of the building
immediately before the loss, we will pay
the replacement cost, without deduction
for depreciation, but not more than the
least of the following amounts:

(a) The limit of liability under this policy
that applies to the building;

(b) The replacement cost of that part of
the building damaged with materials
of like kind and quality and for like
use; or

(c) The necessary amount actually
spent to repair or replace the
damaged building.

If the building is rebuilt at a new
premises, the cost described in 3.b.(1)(b)
is limited to the cost which would have
been incurred if the building had been
built at the original premises.

(2) If, at the time of loss, the amount of
insurance in this policy on the damaged
building is less than 80% of the full
replacement cost of the building
immediately before the loss, we will pay
the greater of the following amounts, but
not more than the limit of liability under
this policy that applies to the building:

(a) The actual cash value of that part of
the building damaged; or

(b) That proportion of the replacement
cost, without deduction for
depreciation, for that part of the
building damaged, which the total
amount of insurance in this policy on

the damaged building bears to 80%
of the replacement cost of the
building.

(3) To determine the amount of insurance
required to equal 80% of the full
replacement cost of the building
immediately before the loss, we will not
include the value of:

(a) Excavations, footings, foundations,
piers or any other structures or
devices that support all or part of the
building, which are below the
undersurface of the lowest basement
floor;

(b) Those supports described in (3)(a)
which are below the surface of the
ground inside the foundation walls, if
there is no basement; and

(c) Underground flues, pipes, wiring and
drains.

(4) We will pay no more than the actual cash
value of the damage until actual repair or
replacement is complete. Once actual
repair or replacement is complete, we will
settle the loss as noted in Property –
Condition 3. Loss Settlement b.(1) and
b.(2).

If replacement cost is less than 5% of the
amount of insurance in this policy on the
building and less than $2,500, we will
settle the loss as noted in Property –
Condition 3. Loss Settlement b.(1) and
b.(2) whether or not actual repair or
replacement is complete.

(5) You may disregard Property – Condition
3. Loss Settlement b. and make claim
under this policy for loss to buildings on
an actual cash value basis. You may then
make claim for any additional liability
according to the provisions of this
Property – Condition 3. Loss Settlement,
provided you notify us, within 180 days
after the date of loss, of your intent to
repair or replace the damaged building.

c.  The amount we will pay to settle a covered
loss does not include:

(1) Compensation for stigma damage or any
actual or perceived reduction or
diminution in value of such property that
may remain after repair or replacement;

(2) The cost to replace undamaged roofing
materials due to any mismatch between
the existing undamaged roof on a
building and new materials used to repair

© 2018 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

or replace the damaged roof on a building because of:

   (a) Wear and tear, marring, scratching or deterioration;

   (b) Fading, weathering, oxidizing or color;

   (c) Texture or dimensional differences; or

   (d) Obsolescence or discontinuation; or

  (3) The cost to replace undamaged siding materials due to any mismatch between the existing undamaged siding on a building and new materials used to repair or replace the damaged siding on a building because of:

   (a) Wear and tear, marring, scratching or deterioration;

   (b) Fading, weathering, oxidizing or color;

   (c) Texture or dimensional differences; or

   (d) Obsolescence or discontinuation.

**4. Loss Deductible.** Unless otherwise stated in this policy, the following deductible provision applies:

  a. Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under the Property Coverage Section that exceeds the deductible amount shown in the Declarations.

  b. If two or more deductibles under this policy apply to the same loss, the total amount of all deductibles applied to the loss will not exceed the amount of the largest applicable deductible.

**5. Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

  a. Repair or replace any part to restore the pair or set to its value before the loss; or

  b. Pay the difference between actual cash value of the property before and after the loss.

Property – Condition 3. Loss Settlement c.(1) does not apply to this Condition.

**6. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

  a. Reach an agreement with you;

  b. There is an entry of a final judgment; or

  c. There is a filing of an appraisal award with us.

**7. Appraisal.** If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

  a. Pay its own appraiser; and

  b. Bear the other expenses of the appraisal and umpire equally.

**8. Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

  a. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

  b. A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is said to be insurance.

**9. Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under the Property Coverage Section of this policy and the action is started within two years after the date of loss.

**10. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**11. Abandonment of Property.** We need not accept any property abandoned by an "insured".

**12. Mortgage Clause.** The word mortgagee includes trustee.

  a. If a mortgagee is named in this policy, any loss payable under Property Coverages A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

is named, the order of payment will be the same as the order of precedence of the mortgages.

b. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

(2) Pays any premium due under this policy on demand if you have neglected to pay the premium; and

(3) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Property Conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

c. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

d. If we pay the mortgagee for any loss and deny payment to you:

(1) We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving

property for a fee regardless of any other provision of this policy.

**14. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**15. Salvage.** We have the option to take the salvage or remnant part of any covered property for which we have made a loss payment for the actual cash value or the replacement cost of the damaged covered property. At our option, we may allow you to retain damaged property and will adjust any loss payment by the agreed or appraised value of the salvage or remnant portion of the damaged property.

**16. Policy Period.** This policy applies only to loss which occurs during the policy period.

**17. Concealment or Fraud.** We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

**18. Premises Alarm, Security or Fire Protection System.** When Protective Devices Credit is shown in the Declarations, you agree to maintain any alarm, security or automatic protection systems, including fire and sprinkler system(s), in working order. You also agree to advise us promptly of any change, including removal, made to any of these system(s).

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-L88 CW (08-20)

## LIABILITY COVERAGE SECTION

---

## LIABILITY COVERAGE E – PREMISES LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance, or use of the "insured location" and caused by an "occurrence", we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" is exhausted by the payment of a judgment or settlement.

---

## LIABILITY COVERAGE F – MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, optical, dental, ambulance, hospital, professional nursing, prosthetic devices, chiropractic, rehabilitative, extended care and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on an "insured location" with the permission of an "insured"; or

2. To a person off an "insured location", if the "bodily injury":

    a. Arises out of a condition on an "insured location" or the ways immediately adjoining; or

    b. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured".

---

## LIABILITY – ADDITIONAL COVERAGES

Unless otherwise stated, we cover the following in addition to the Liability Coverage E and Liability Coverage F limits of liability:

1. **Claim Expenses.** We pay:

    a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

    b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

    c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

    d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

3. **Loss Assessment.** We will pay up to the limit shown in the Declarations for this Liability – Additional Coverage for your share of loss assessment charged against you, as owner of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

    a. "Bodily injury" or "property damage" not excluded under the Liability Coverage Section of this policy; or

    b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

        (1) Is elected by the members of a corporation or association of property owners; and

HQ-L88 CW (08-20)

**Page L-1**

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

Liability – Condition 9. Policy Period does not apply to this coverage.

Regardless of the number of assessments, the limit shown in the Declarations for this Liability – Additional Coverage is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition;

b. A covered act involving one or more than one director, officer or trustee; or

c. Repeated acts by one or more than one director, officer or trustee.

Repeated acts will be considered a single covered act.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## LIABILITY – EXCLUSIONS

A. **Liability Coverage E – Premises Liability and Coverage F – Medical Payments to Others.**

Liability Coverages E and F do not apply to the following:

1. "Aircraft Liability".

    This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

2. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

    Exclusion A.2. applies to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business".

    Exclusion A.2. does not apply to the rental or holding for rental of any part of an "insured location".

3. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened transmission of a communicable disease or illness by an "insured". This exclusion applies whether the transmission was voluntary or involuntary or whether an "insured" knew or should have known that the infected person was infected with the disease or illness.

4. "Bodily injury" or "property damage" caused by an animal owned by or in the care, custody or control of an "insured" or guest of an "insured" or, in the

care, custody or control of a roomer, boarder, tenant, resident, "residence employee" or guest of such roomer, boarder, tenant, resident, "residence employee" or other occupant of the "residence premises" that is:

a. Wild by birth or by nature or a species not customarily domesticated;

b. Illegal to acquire, own or keep;

c. A bird of prey;

d. Venomous or poisonous; or

e. A non-human primate.

5. "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage" is:

a. Of a different kind, quality or degree than initially expected or intended; or

b. Sustained by a different person, entity, real or personal property, than initially expected or intended.

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property.

6. "Bodily injury" or "property damage" arising out of the escape or release of fuel from a "fuel system". This exclusion applies to any:

a. Supervision, instructions, recommendations, warnings or advice given in connection with the above;

b. Obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

damage", damages, loss, cost, payment or expense; or

c. Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

This exclusion does not apply to "bodily injury" or "property damage" arising out of fire or explosion that results from such escaped or released fuel.

7. "Bodily injury" or "property damage" arising out of the actual or alleged presence of or actual, alleged or threatened dispersal, release, ingestion, inhalation, contact with or exposure to, whether directly or indirectly, by "fungi" or other microbes. This includes any:

a. Supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" arising out of, whether directly or indirectly, by "fungi" or other microbes, or the activities described in 7.c. below;

b. Obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage";

c. Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of "fungi" or other microbes; and

d. Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes.

8. "Bodily injury" or "property damage" arising out of any written or oral statement made by you or others on your behalf which is material to any financial transaction.

9. "Bodily injury" or "property damage" arising out of any oral, written, electronic, digital or other means of, communication, publication or physical action that:

a. Is directed at or to an individual or group of individuals; and

b. Includes content, material or action that is or is perceived as:

(1) Bullying, harassing, degrading, intimidating, threatening, tormenting or otherwise abusive; or

(2) Causing or having caused emotional or psychological distress or fear of imminent harm or death.

This exclusion applies whether or not the communication, publication or action is:

a. Composed, created, sent or performed by an "insured";

b. Part of a series of communications, publications or actions;

c. Directed at or to the person who suffered "bodily injury" or "property damage";

d. Expected or intended to cause emotional, mental or physical harm to an individual; or

e. Intended to be public or private.

10. "Hovercraft Liability".

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

11. "Bodily injury" or "property damage" arising out of the sale, manufacture, delivery or transfer by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Illegal or Controlled Substances include but are not limited to cocaine, heroin, LSD, methamphetamines, marijuana and all narcotic drugs.

This exclusion does not apply to the lawful use of prescription drugs by a person following the orders of a licensed healthcare provider.

12. "Bodily injury" or "property damage" arising out of the:

a. Illegal growing of plants or the illegal raising or keeping of animals; or

b. Illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials.

This exclusion applies whether or not the illegal activities described above were within the control or knowledge of an "insured".

13. "Bodily injury" or "property damage" arising out of the actual or alleged presence of or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into

© 2020 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

any material or substance. This exclusion applies to any:

a. Supervision, instructions, recommendations, warnings or advice given in connection with the above;

b. Obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense;

c. Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form; or

d. Loss, cost, payment or expense related to any claim, suit, order, defense, demand or investigation of any kind incurred in connection with the above.

14. "Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location".

15. "Motor Vehicle Liability".

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

16. "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse.

17. "Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Declared or undeclared war, civil war, acts of terrorism, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon, even if the discharge is accidental, will be deemed a warlike act.

18. "Watercraft Liability".

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

B. Liability Coverage E – Premises Liability.

Liability Coverage E does not apply to the following:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in Liability – Additional Coverage 3. Loss Assessment;

b. Under any contract or agreement entered into by an "insured". This exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) In which the liability of others is assumed by an "insured" prior to an "occurrence";

unless excluded in 1.a. or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke, water or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law.

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

© 2020 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

b. Would be an insured under that policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or a regular resident of your household, other than a "residence employee".

**C. Liability Coverage F – Medical Payments to Others.**

Liability Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off an "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", residing on any part of an "insured location".

## LIABILITY – CONDITIONS

1. **Limit of Liability.** Our total liability under Liability Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Liability Coverage E shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

   Our total liability under Liability Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Liability Coverage F limit of liability shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured". This Liability – Condition will not increase our limit of liability for any one "occurrence".

3. **Duties After "Occurrence".** In the event of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if you fail to comply with the following duties.

   a. Give us written notice as soon as is practical, which sets forth:

      (1) The identity of the policy and the named "insured" shown in the Declarations;

      (2) Reasonably available information on the time, place and circumstances of the "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit;

   c. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. No "insured" will, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

4. **Duties of an Injured Person – Liability Coverage F – Medical Payments to Others.**

   a. The injured person or someone acting for the injured person will:

      (1) Give us written proof of claim, under oath if required, as soon as is practical; and

© 2020 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

(2) Authorize us to obtain copies of medical reports and records.

b. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim – Liability Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under the Liability Coverage Section of this policy.

No one will have the right to join us as a party to any action against an "insured".

Also, no action with respect to Liability Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Policy Period.** This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

10. **Concealment or Fraud.** We do not provide coverage to an "insured" who, whether before or after a loss, has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

© 2020 The Travelers Indemnity Company. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

## SIGNATURE PAGE

This policy is signed for the member company of Travelers which is the insurer under this policy.

Wendy C. Skjerven
Corporate Secretary

Michael Klein
President
Personal Insurance

© 2016 The Travelers Indemnity Company  All rights reserved

## SPECIAL PROVISIONS – ARKANSAS

**This Endorsement Changes The Policy. Please Read It Carefully.**

### NOTICE

In accordance with ARK. CODE ANN. § 23-88-106, we are providing notice of the following:

> Unless otherwise provided by this policy, we may deduct expense depreciation. Expense depreciation is defined as depreciation, including but not limited to the cost of goods, materials, labor and services necessary to replace, repair or rebuild damaged property.

> If expense depreciation is applied to a loss for damaged property, the insurer shall provide a written explanation as to how the expense depreciation was calculated.

### POLICY CONDITIONS

When this Special Provisions – Arkansas is used with form HQ-D77, **4. Cancellation.** is replaced by the following:

**4. Cancellation.** This policy may be cancelled during the policy period as follows:

  **a.** A named "insured" shown in the Declarations may cancel this policy by:

    **(1)** Returning this policy to us; or

    **(2)** Giving us advance notice of the date cancellation is to take effect.

    We may accept another form of notice from a named "insured". The cancellation by a named "insured" will be binding on any other named "insured".

  **b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, electronically transmitted to you, if permissible by law, or mailed to you at your mailing address shown in the Declarations. Proof of mailing or electronic transmission will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

    **(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect;

    **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 20 days before the date cancellation takes effect; or

    **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      **(a)** Upon discovery of fraud or material misrepresentation made by or with the knowledge of the named insured in obtaining or continuing this policy, or in presenting a claim under this policy;

      **(b)** Upon the occurrence of a material change in the risk which substantially increases any hazard insured against after insurance coverage has been issued;

      **(c)** If there is a violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property which substantially increases any hazard insured against;

      **(d)** For nonpayment of membership dues required by us as a condition of the issuance and maintenance of this policy; or

      **(e)** In the event of a material violation of a material provision of this policy.

      This can be done by letting you know at least 20 days before the date cancellation takes effect.

  **c.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

  **d.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

When this Special Provisions – Arkansas is used with form HQ-D88, **4. Cancellation.** is replaced by the following:

**4. Cancellation.** This policy may be cancelled during the policy period as follows:

© 2021 The Travelers Indemnity Company  All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

a. A named "insured" shown in the Declarations may cancel this policy by:

   (1) Returning this policy to us; or

   (2) Giving us advance notice of the date cancellation is to take effect.

We may accept another form of notice from a named "insured". The cancellation by a named "insured" will be binding on any other named "insured".

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, electronically transmitted to you, if permissible by law, or mailed to you at your mailing address shown in the Declarations. Proof of mailing or electronic transmission will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect;

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 20 days before the date cancellation takes effect; or

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

     (a) Upon discovery of fraud or material misrepresentation made by or with the knowledge of the named insured in obtaining or continuing this policy, or in presenting a claim under this policy;

     (b) Upon the occurrence of a material change in the risk which substantially increases any hazard insured against after insurance coverage has been issued;

     (c) If there is a violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy of such property which substantially increases any hazard insured against;

     (d) For nonpayment of membership dues required by us as a condition of the issuance and maintenance of this policy; or

     (e) In the event of a material violation of a material provision of this policy.

     This can be done by letting you know at least 20 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

The first paragraph under **7. Subrogation** is replaced by the following:

**7. Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. However, we will be entitled to a recovery only after an "insured" has been fully compensated for the loss sustained.

## PROPERTY COVERAGE SECTION
## PROPERTY – ADDITIONAL COVERAGES

When this Special Provisions – Arkansas is used with forms **HQ-P02, HQ-P03, HQ-P04** or **HQ-P06**, paragraph **a.(1)(a)** under **16. Limited "Fungi" or Other Microbes Remediation** is deleted.

## PROPERTY – EXCLUSIONS

**11. "Fungi" or Other Microbes** is replaced by the following:

**11. "Fungi", Other Microbes or Rot**, meaning any loss or cost resulting from, arising out of, caused by, consisting of or related to "fungi", other microbes or rot. This exclusion does not apply to:

a. "Fungi" or other microbes remediation coverage that may be afforded under Property – Additional Coverage 16. Limited "Fungi" or Other Microbes Remediation (this is Property – Additional Coverage 11. Limited "Fungi" or Other Microbes Remediation in forms HQ-P53 and HQ-P56); or

b. "Fungi", other microbes or rot located upon the portion of covered property that must be

© 2021 The Travelers Indemnity Company  All rights reserved
Includes copyrighted material of Insurance Services Office, Inc. with its permission

repaired or replaced because of direct physical damage that results from a Peril Insured Against.

**PROPERTY – CONDITIONS**

2. **Duties After Loss paragraph a.** is replaced by the following:

2. **Duties After Loss.**

   a. Give us prompt notice. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than one year after the date of loss. However, for loss caused by the peril of windstorm or hail, any such loss may be reported more than one year after the date of loss, but no later than two years after the date of loss, if the person reporting the loss can show there was good cause for the delay;

When this Special Provisions – Arkansas is used with forms **HQ-P02, HQ-P03** or **HQ-P53**, **3. Loss Settlement** paragraphs c.(2) and c.(3) are deleted.

7. **Appraisal** is replaced by the following:

7. **Appraisal.** If you and we fail to agree on the amount of loss, an appraisal of the loss may take place. However, an appraisal will take place only if both you and we agree, voluntarily, to have the loss appraised. If so agreed, each party will choose a competent and impartial appraiser within 20 days after both parties agree. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately state the amount of loss. If the appraisers submit a report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. An appraisal decision will not be binding on either party.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

9. **Suit Against Us.** Is replaced by the following:

9. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under the Property Coverage Section of this policy and the action is started within five years after the date of loss.

12. **Mortgage Clause paragraph c.** is replaced by the following (this is not applicable in form HQ-P04):

12. **Mortgage Clause.**

    c. If we decide to cancel this policy, the mortgagee will be notified at least:

       (1) 10 days before the date cancellation takes effect if:

          (a) We cancel for nonpayment of premium; or

          (b) The policy has been in effect for less than 60 days and is not a renewal with us; or

       (2) 20 days before the date cancellation takes effect in all other cases.

       If we decide not to renew this policy, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

All other provisions of this policy apply.

© 2021 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

HQ-860 CW (08-18)

# ADDITIONAL BENEFITS

**This Endorsement Changes The Policy. Please Read It Carefully.**

## POLICY CONDITIONS

For purposes of this Additional Benefits only, the following policy condition is added:

Additional Benefits. From time to time we may provide you or allow others to provide you, or another person insured under this policy with:

a. Goods and services, devices, equipment, memberships, merchandise, points, rewards, gift cards, redemption codes, coupons, vouchers, airline miles, special offers, classes, seminars, other program benefits or other items of value; or

b. Make charitable contributions, donations or gifts on your behalf.

These Additional Benefits may be provided in any form. If one or more of our benefit programs apply, you or another person insured under this policy may be eligible to receive benefits specific to that program depending on the terms of the program and Additional Benefit provided.

You are under no obligation to pursue any of these Additional Benefits.

We do not warrant the merchantability, fitness or quality of any goods or services provided under this endorsement or assume any additional obligation related to any Additional Benefits provided.

We have the right to modify or discontinue benefits provided under this endorsement without notice to you.

All other provisions of this policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

**TRAVELERS**J                          4387                    Exhibit "B"

TRAVELERS PERSONAL INSURANCE COMPANY
P.O. Box 430
Buffalo, NY 14240-0430

03/08/2023


Kenneth Milligan
P.O. Box 2433
West Helena AR 72390


| | |
|---|---|
| Insured: | Kenneth Milligan |
| Claim Number: | IIL8693 |
| Policy Number: | 0B8739-611717295-653-1 |
| Date of Loss: | 05/08/2022 |
| Loss Location: | 1115 Porter St Helena AR |

Dear Mr. Milligan:

I am writing on behalf of Travelers Personal Insurance Company ("Travelers") regarding the above-referenced insurance claim.

Travelers has completed its investigation of your claim. As set forth more fully below, the above-referenced policy does not provide coverage for your claim because loss resulting from intentional and wrongful acts committed in the course of vandalism or malicious mischief is not a covered loss where the property has been vacant for 60 consecutive days prior to the loss.

The Travelers policy provides, in part, as follows:

**PROPERTY – PERILS INSURED AGAINST**

**We insure for direct physical loss to the property described in Property Coverages A, B and C caused by any of the following perils unless the loss is excluded in Property – Exclusions.**

. . .

**8. Vandalism or Malicious Mischief**
  **This peril does not include loss:**
. . .
     b. **To property on the "residence premises", and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss regardless of the policy's inception or renewal date.**

Under the Travelers policy, "'[v]acant' means the dwelling or unit lacks the necessary amenities, adequate furnishings or utilities and services required to sustain normal occupancy."

Travelers' investigation revealed that the fire that damaged the property at the loss location resulted from an act of arson. Travelers obtained video footage from a neighbor's surveillance camera that shows a vehicle approaching the back of the premises just minutes before the fire began. The footage shows a man exiting the vehicle and approaching the premises with a

container in hand and walking away minutes later. Shortly thereafter, the premises was visibly on fire. Arson is an intentional and wrongful act committed in the course of vandalism or malicious mischief. Fire damage to the property is an ensuing loss from arson.

The premises was vacant for more than 60 consecutive days prior to the loss. Travelers' investigation revealed that Bobby Lee Jones owned the premises for approximately one year prior to selling it to you on April 26, 2022. The premises was empty and unoccupied while Mr. Jones owned it and even before then. During your September 8, 2022, examination under oath, you testified that there was only a piano at the premises when you purchased the premises. You further testified you had not rented out the premises at the time of the loss. Travelers' investigation revealed that there were no appliances in the premises at the time of the fire and that the water was not turned on at the time of the fire. Thus, for more than 60 consecutive days prior to the loss, the property did not have the "necessary amenities" nor the "adequate furnishings . . . required to sustain normal occupancy" and was therefore vacant.

The loss was the consequence of arson, an intentional and wrongful act committed in the course of vandalism, and the premises had been vacant for more than 60 consecutive days prior to the loss. Therefore, the policy does not provide coverage for this loss.

This decision is based on the information and documentation we received during our investigation of this claim. If you are aware of any new or different information or documentation that may lead us to reconsider our decision, please contact me immediately.

Your policy may have other terms, conditions, and exclusions that apply to this claim. Travelers does not waive any rights, including its right to deny coverage, for any other valid reason under the policy or at law.

Please review the Legal Action Against Us condition of your policy as it contains important information about the period of time in which you may bring legal action.

If you have questions, please contact me at mheathco@travelers.com or 314-249-4239.

Sincerely,

Margaret Heathcote
Claim Professional
Direct: (314)249-4239
Office: (800)238-6225 Ext. 314-249-4239
Fax: (866)381-6247
Email: MHEATHCO@travelers.com