IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**KENNETH MILLIGAN**                                                                 **PLAINTIFF**

v.                              Case No. 2:23-CV-00179-JM

**TRAVELERS PERSONAL**
**INSURANCE COMPANY**                                                          **DEFENDANT**

**ORDER**

Plaintiff Kenneth Milligan initiated this case against Defendant Travelers Personal Insurance Company in Phillips County, Arkansas Circuit Court seeking enforcement of his insurance claim following a fire. *See Milligan v. Travelers Personal Insurance Company*, 54CV-23-127. (Doc. 1 at 5). Defendant removed this case to federal court based on diversity jurisdiction and now moves for summary judgment. (Doc. 11). Mr. Milligan has responded.[1] (Doc. 19). For the reasons stated below, Defendant's motion for summary judgment (Doc. 11) is GRANTED.

**I.    Standard of Review**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987), FED. R. CIV. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

---

[1] Mr. Milligan's response reads, "I Kenneth Milligan want to deny all allegations pertaining in this motion judgement. I would like to continue with the lawsuit."

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial on disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Additionally, the Local Rules of the Eastern District of Arkansas require the party moving for summary judgment to file (along with its motion and brief) a "separate, short and concise statement of the material facts" stating that there are no disputed facts. LOCAL RULE 56.1(a). These facts are deemed admitted when not contested by a separately filed statement of fact. LOCAL RULE 56.1(b)-(c); FED. R. CIV. P. 56(e)(2). Mr. Milligan did not file this pleading. Because Mr. Milligan has not complied with the local rule, the Court will deem Defendant's statement of fact admitted.

**II.     Facts**

The day after he learned of its availability, Mr. Milligan purchased a vacant house on April 26, 2022, at 1113 Porter Street in Helena, Arkansas for $7,000. (Doc. 11-1 at 5–7, 10; Doc. 11-4

at 7). Mr. Milligan was not given a key to the property. (Doc. 11-4 at 5). Rather, he explained the seller told him the back door was open and that is how Mr. Milligan was able to access the house. (*Id*. at 5–6). The following day, Mr. Milligan obtained a landlord insurance policy from Defendant on the house with a $368,000 policy limit and an annual premium of $2,875.00. (Doc. 11-3). A neighbor, Elizabeth Jackson, reported that in the 20 years she had lived next door, the home purchased by Mr. Milligan had never been occupied. (Doc. 11-2 at 1). Outside of a few pieces of furniture, the house was unfurnished, had no appliances, no utilities, and was empty. (Doc. 11-1 at 5–7, Doc. 11-4 at 7, Doc. 11-6, Doc. 11-7, Doc. 11-8, Doc. 11-9). The condition of the home did not change during Mr. Milligan's ownership. (*Id*.).

      The house burned on May 9, 2022, resulting in the loss of its second story and its first floor sustaining "significant fire damage . . . with ceilings, walls and floors missing or heavily charred." (Doc. 11-1 at 14, Doc. 11-10 at 2). Mr. Milligan filed an insurance claim on May 8, 2022. (Doc. 11-10). As a matter of course, Defendant opened an investigation into the cause of the fire and hired an independent fire investigator, David Edge. Mr. Edge determined that the fire began in two separate locations—the south exterior at the location of the electrical base and inside the home at the stairs. (Doc. 11-6 at 1). Given that the house was unoccupied and had no utilities (including no electrical transmission lines from the transformer pole to the house) or appliances, Mr. Edge concluded the fire had been intentionally set. (*Id*. at 2). He found that "[t]here is no explanation for how the fire originated other than that a human introduced a heat source." (*Id*. at 1–2). Photos taken by Mr. Edge confirm the house's scant furnishings, lack of appliances, and absence of personal effects or items showing occupancy. (Doc. 11-5).

      Defendant also obtained video footage from Ms. Jackson's home surveillance system. (Doc. 11-2; Doc. 15). At 6:07 a.m. on the morning of the fire, a black SUV arrived behind

Mr. Milligan's property and a man was dropped off. (*Id*.). The man can be seen on the video walking around the house and carrying a container. (*Id*.). The man is next seen walking away from the house at 6:13 a.m. and then, at 6:14 a.m., the same black SUV passes by the camera. (*Id*.). The cameras recorded smoke billowing from Mr. Milligan's home at 6:31 a.m. (*Id*.).

Following the investigation, Defendant denied Mr. Milligan's claim finding that the policy excluded a loss caused by "intentional and wrongful acts in the course of vandalism or malicious mischief" on properties "vacant for 60 consecutive days prior to the loss." (Doc. 11-11). Under the policy, a home is considered "vacant" when "the dwelling or unit lacks the necessary amenities, adequate furnishings or utilities and services required to sustain normal occupancy." (Doc. 11-3 at 11). The policy excludes coverage for vandalism, defined as "any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been 'vacant' for more than 60 consecutive days immediately before the loss regardless of the policy's inception or renewal date." (*Id*. at 14). Based on these findings, Defendant denied Milligan's insurance claim on March 8, 2023 explaining that acts of vandalism were excluded from coverage. (Doc. 11-11).

### III.   Analysis

In order to succeed with his suit, Mr. Milligan must show that the insurance policy issued by Defendant on his rental property covered the fire loss caused by vandals. As previously stated, Mr. Milligan did not properly challenge Defendant's statement of facts; therefore, those facts are undisputed and accepted as true. Under the insurance policy issued to Mr. Milligan, the property would be covered for fire loss as long as the property (1) had not been vacant for sixty days prior to the loss <u>and</u> (2) the loss was not the result of vandalism. Defendant argues that the evidence leaves no room to question that these requirements have been met. The Court agrees.

The home lacked the amenities to demonstrate occupancy. The home had no appliances, including no way to store or heat food. Even if there had been appliances on the property, they would have been inoperable as the home lacked utilities— no running water, no electricity, and no gas. In fact, there were no electrical transmission lines from the transmission pole to the structure. The photos of the home show an empty kitchen devoid of any of the usual items demonstrating occupancy. Likewise, the few pieces of aged furniture were empty or broken and nowhere in the home was there personal items such as photos or clothing. The vacancy of the house is further confirmed by Ms. Jackson who swore that the home had been uninhabited for the 20 years she had lived next door. Defendant has demonstrated there is no genuine issue of fact surrounding the property's vacancy for 60 consecutive days before the fire.

Likewise, there is no genuine issue of fact as to the source of the fire – arson. Defendant offered the conclusions of an unrefuted expert who determined the fire originated by human involvement. With neither gas nor electricity present at the home, Mr. Edge concluded that a human-introduced heat source was the source of the fire. The obvious human would be the unknown man who was videoed being dropped at the house in early morning moments before the fire began. Mr. Milligan admitted the back door to the property was unlocked showing that the man had access to the home's interior to set the fire by the stairs. That man was seen carrying a mysterious container around the exterior of the house where one source of the fire was confirmed to have been originated. The exterior fire was set at the home's electrical connections; however, the home had no electricity. Within fifteen minutes of the man leaving the scene, the house is engulfed in flames such that smoke was captured on video billowing from the property. Mr. Milligan offers no argument or facts to dispute either the home's vacancy or the apparent arson.

## IV.     Conclusion

Accordingly, because no genuine issue of material fact remains, Defendant's motion for summary judgment (Doc. 41) is GRANTED. This case is DISMISSED with prejudice.

IT IS SO ORDERED this 28th day of April, 2025.

_____
UNITED STATES DISTRICT JUDGE